228 U.S. 27 (1913)
FRIEND
v.
TALCOTT.
No. 155.
Supreme Court of United States.
Argued January 30, 31, 1913.
Decided April 7, 1913.
CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SEVENTH CIRCUIT.
Mr. Chester E. Cleveland, with whom Mr. Jacob Newman, Mr. Salmon O. Levinson and Mr. Benjamin V. Becker were on the brief, for petitioners.
Mr. Albert M. Kales, with whom Mr. Horace Kent Tenney and Mr. Roger Sherman were on the brief, for respondent.
*33 MR. CHIEF JUSTICE WHITE delivered the opinion of the court.
On February 1, 1904, the commercial firm of Friend, Moss & Morris, and its members, were adjudicated bankrupts. As the issues here to be considered are unaffected thereby and the subject was treated as irrelevant by the courts below and no question concerning it is insisted on by the respondent, we put out of view an order subsequently made setting aside the adjudication as to the members of the firm individually.
Talcott, the respondent, was allowed a claim for $3,204.91, the unpaid price of goods sold to the firm on credit. The firm, availing of the right to make a composition with its creditors, given by §§ 12 and 13 of the Bankruptcy Act of July 1, 1898, c. 541, 30 Stat. 544, 549, asked the court to approve a proposed composition. Talcott, among others, opposed, upon the ground that the bankrupt had procured the sale on credit of the goods, the price of which formed the basis of his (Talcott's) allowed claim, by means of false reports made to a commercial agency of the financial condition of the firm. The *34 specification of the grounds of objection just stated is reproduced in the margin.[1]
Before a master the bankrupt contended that the objection of Talcott was insufficient because even if the facts were true they were inadequate to prevent the approval of the composition. The master, accepting that view, without taking testimony, reported in favor of approval. The report on the subject was as follows:
"As to specification No. 8 of James Talcott, referred to, I am of the opinion that a reasonable and proper construction of section 14b (3) would require the `materially false statements in writing' to be made directly to the creditor in question, and I deem the allegations in this specification which are to the effect that the alleged false statement was made to a commercial agency to be insufficient, *35 and I am of the opinion that the specification should be overruled for this reason."
This report was objected to by Talcott on the ground that the master erred in refusing to take proof as to the alleged false statements and in treating them as legally insufficient. The objections were overruled and the report was confirmed. The order of confirmation, following the requirements of paragraph d of § 12 (30 Stat. 550), recited that the composition was "for the best interest of the creditors," and "that the bankrupt has not been guilty of any of the acts or failed to perform any of the duties which would be a bar to a discharge." The result was to give the bankrupt a general discharge in virtue of sub-division c of § 14 (30 Stat. 550), which says: "The confirmation of the composition shall discharge the bankrupt from his debts, other than those agreed to be paid by the terms of the composition and those not affected by a discharge."
In April, 1905  about a year after the composition  Talcott commenced this action to recover from the former bankrupt firm the damages suffered by him because of deceit practiced in procuring the sale of goods on credit. The deceit relied upon was the deceit which had been alleged as a basis for the opposition to the composition, that is, false reports made in writing to a commercial agency as to the financial condition of the firm, except that in one count no mention was made of the commercial agency. On the face of the declaration the sales asserted to have been made were the same sales the price of which formed the basis of the claim filed and allowed, and if not accurately, at least approximately the amount of the damage sought to be recovered was the difference between the aggregate price of such sales diminished by the extent of the distribution paid upon the composition. In addition to the general issue the defendants set up as res judicata the order arising from confirmation of the composition. *36 The cause was heard upon the issue of former adjudication, and judgment was entered in favor of the defendants, the judgment reciting that the matters and things involved in the suit had been fully adjudicated in the bankruptcy proceedings. On reviewing the cause the Circuit Court of Appeals concluded that the act of Talcott in going into the bankruptcy proceedings and proving his claim as one on contract did not constitute an election by him to be bound by the discharge if otherwise under the Bankruptcy Act the claim was excepted from such discharge, and that the fact of participating in the bankruptcy proceeding for the purpose of obtaining the benefits of the distribution therein made was not a waiver by Talcott of his right to proceed in an action for deceit to collect the deficiency notwithstanding the discharge. The court, moreover, decided that the opposition to the composition, its confirmation and the resulting general discharge did not constitute the thing adjudged, estopping Talcott from asserting that his claim for damages suffered by the deceit was not embraced by the discharge.
The judgment of the trial court was therefore reversed  179 Fed. Rep. 676  and the case is here on the allowance of a certiorari.
There is a contention that the questions of waiver and election, although passed on by the court below, are not open for our consideration because it is asserted they were not raised in or considered by the trial court. As we think the contention is without merit, we proceed to dispose of the propositions concerning election and waiver and res judicata. In doing so we shall direct our attention to four propositions taken from one of the printed arguments on behalf of the petitioners and which we think embrace all the contentions relied upon. The propositions are these:
1. The record of the bankruptcy proceedings evidenced *37 an election of remedies by respondent which barred his suit for fraudulent representations.
2. The order confirming the composition discharged petitioners from respondent's claim.
3. The order confirming the composition was a complete adjudication against respondent's right of action.
4. Neither the reasons assigned by the District Court for holding respondent's specifications insufficient, nor such holding itself, detract from the legal efficacy of the order confirming the composition as an adjudication of the rights of the parties.
At the outset it is to be observed that the propositions are redundant since they really involve only two distinct contentions: first, election and resulting waiver from the proof by Talcott of his claim in bankruptcy and his participation in the distribution arising from the composition, and second, the binding force of the discharge on the claim of Talcott, because of the force of the thing adjudged resulting from the order approving the composition over the objection of Talcott and the general statutory discharge which resulted.
Coming to dispose of the first contention, we put out of view as irrelevant much that is urged in argument concerning what constitutes an election and waiver in the general sense, since the question here for decision is only whether there was a waiver or election under and for the purposes of the bankrupt law.
The theory of election and waiver arising from the proof of the claim in bankruptcy as one upon contract where the right to sue in tort also existed must rest upon the assumption that it was within the power of the creditor to exercise an election to come under the operation of the bankruptcy proceedings and thus to be bound by the result of such proceedings or to stay out and escape the operation of the act. This must be the case, as it is impossible to conceive of a right of election in a case where *38 no such right existed. But this theory has been expressly decided to be without foundation. Crawford v. Burke, 195 U.S. 176. In that case the ruling was that where a debt was of such a character as to cause it to be within the power of the creditor to enforce the same as an obligation arising on contract or if he chose to do so as one in tort, as from the point of view of contract the debt was provable in bankruptcy, even conceding that it might not be so provable if the tort was relied upon, that it was the duty of the creditor to prove as under contract, and if he abstained from so doing his debt or claim being provable was operated upon and barred by the proceedings. The theory of election and waiver being thus established to be unreal, there is of course nothing left for the proposition to rest upon. But it is said Crawford v. Burke is inapposite because in that case although the claim under consideration involved both the elements of contract and tort, as no judgment had been entered establishing the tort, under the bankrupt law as then existing the debt was not excepted from a discharge, while here, in consequence of the amendment of 1903, the debt if there has been no waiver is excepted from the discharge. This being the case it is urged that an election and waiver resulted from the act of the debtor in proving his claim as on contract and thus taking advantage of the bankruptcy proceedings and thereby obtaining rights or benefits which he would not have had if he had stayed out and thus saved his right to be freed from the operation of the discharge. But this distinction is also wholly without foundation. Its error lies in assuming that the right which the bankrupt act confers upon enumerated classes of debts to be exempt from the operation of a discharge rests upon the conception that such debts are exempt because they are excluded from the act and may not participate in the distribution of assets. That is to say, the confusion lies in not distinguishing between creditors who are excluded *39 from the bankrupt act and those who although included therein have had conferred upon them the benefit of an exception from the operation of the discharge. Even a superficial analysis of the text of the Bankruptcy Act will make this clear. Thus § 63 a and b (30 Stat. 562) enumerates the debts which may be proved and which are therefore entitled to participate in the benefits of the act and are bound by its provisions, including a discharge. Section 17 (30 Stat. 550) enumerates the debts not affected by a discharge, that is, those exempted from its operation. It is apparent that the exemptions do not rest upon any theory of the exclusion of the creditor from the bankrupt act or of deprivation of right to participate in the distribution, but solely on the ground that although such rights are enjoyed, an exemption from the effect of the discharge is superadded. The text leaves no room for any other view, since the exceptions in terms are accorded to certain classes of debts which are provable under § 63, and therefore debts which are entitled to participate in the distribution, the language being: "A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as," etc.
And a brief reference to the more important of the prior bankruptcy acts throws abundant light on the text. The Bankruptcy Act of August 19, 1841, c. 9, 5 Stat. 440, in the first section comprehensively stated the classes of claims which were embraced within its scope and expressly excluded certain enumerated classes. No exemption from the operation of a discharge when granted was conferred, and therefore all who were within the scope of the act, while enjoying its benefits, were bound by its burdens. Under this act, in Chapman v. Forsyth, 2 How. 202, it was held that although a claim was excluded from the law if brought in by the voluntary act of the creditor and he thereby participated in the distribution, the creditor by such election waived his right to *40 be treated as not bound by the statute, and consequently the debt or claim was discharged. The Bankruptcy Act of March 2, 1867, c. 176, 14 Stat. 517, presumably to correct the injustice which arose from excluding from all participation in the distribution of assets those creditors whom it was thought because of the meritorious nature of their debt should not be bound by the discharge, departed from the system of excluding such creditors from the act and on the contrary adopted the principle of including them in the benefits of the act and yet at the same time exempting them from the operation of the discharge. To accomplish this result, § 19 of the act (14 Stat. 525) made a most comprehensive enumeration of provable debts, including as well unliquidated damages for torts as for breaches of contracts. Those things which in the act of 1841 were stated to be excluded from the operation of the act were embodied in a particular section (§ 33, 14 Stat. 333) dealing with exemptions from discharge, and to avoid all possible misconception the section provided " . . . but the debt may be proved, and the dividend thereon shall be a payment on account of said debt." It is obvious that the present act embodies the same policy, since the exemptions from discharge which are given by the statute are found in a section devoted to that subject and are stated in words, as we have said, to be exemptions from discharge allowed in favor of provable debts, that is, debts entitled to participate which are given the benefit of an exemption from the operation of the discharge.
While the considerations just stated dispose of the question of waiver and election, they virtually also serve to indicate the error which underlies the contention as to res judicata, that is, a confusion of thought arising from treating things which are different as one and the same. To constitute res judicata, it is elementary that there must be identity of cause between the two cases. In view of *41 the text of the bankrupt law, the distinction which it makes between the general discharge and the right of a particular creditor to be exempt from the operation of such discharge it needs but statement to demonstrate the difference of cause which necessarily obtains between determining on the one hand in favor of the bankrupt whether he is entitled to a general discharge and of deciding on the other, as between a particular creditor and the bankrupt, whether the claim of that creditor is of such a character as to be exempt from the operation of a discharge. Nothing could more clearly emphasize the distinction which exists between the two subjects  that is, the granting of a general discharge and the question after it is granted whether a particular debt is exempted by law from its operation  than does the provision of the statute (§ 14c, 30 Stat. 550) authorizing a general discharge as the result of an approval of a composition, since it expressly reserves from the operation of such discharge of the bankrupt from his debts, "those not affected by a discharge." It is elaborately argued, however, that whatever be the infirmity of the decree of confirmation as res judicata in the complete sense, that decree was necessarily binding in so far as it established relevant facts which were at issue between the parties and therefore is here conclusive. But the proposition rests upon an unfounded assumption, as nothing in the assertion of the right to be exempt from the operation of the discharge here relied upon involves a traverse or denial of any relevant fact established as a result of the approval of the composition. On the contrary, as we have seen, the facts here relied upon to establish the exemption from discharge, are the facts which were conceded to exist and were not traversed for the purpose of the hearing on the composition.
Conceding for the sake of argument that the facts which were alleged as the basis of the opposition to the approval *42 of the composition were sufficient, had the law been rightly applied, to have prevented the approval of the composition, such concession would afford no ground for holding that because one case in matter of law was erroneously decided, that such decision should conclusively establish the duty to erroneously decide another and distinct case. If, on the other hand, it be conceded that the composition was rightfully approved, as the determination of that subject did not under the very terms of the statute involve passing upon the separate and distinct claim of creditors to be exempt from the operation of the discharge, it results that in no view of the case is there merit in the contention as to res judicata. The contentions urged in many forms based upon the recitals in the order of confirmation of the composition made conformably to the statute as to the absence of fraud or other wrongdoing, etc., is but a reiteration of the contention as to res judicata which we have shown to be without foundation.
Affirmed.
NOTES
[1] That said bankrupts obtained from said James Talcott and from other creditors property upon credit upon a materially false statement in writing made to said creditors for the purpose of obtaining such property upon credit; that said statement was so made on or about the 21st day of January, 1903, to Woods Dry Goods Commercial Agency, which, as said bankrupts knew, was a commercial agency engaged in the business of receiving statements of the financial condition of persons applying for the purchase of goods upon credit and to be communicated to those from whom they sought such credit; that said statement was duly communicated to said James Talcott and to others by said Commercial Agency for the purpose of being acted upon by them in selling goods to said bankrupts upon credit, and that thereafter said James Talcott and others did sell and deliver goods to said bankrupts upon credit, relying upon said statement; that by the statement so made in writing by said bankrupts it was averred that they had a net surplus on January 1st, 1903, of ninety-two thousand nine hundred and eighty-eight and 95-100 dollars over and above all debts and liabilities, whereas, in truth and in fact, they had no surplus over and above their debts, but were wholly insolvent. All of which facts were well known to said bankrupts at the time said statement was made, but were not known to said James Talcott and other creditors who sold goods to said bankrupts in reliance upon said statement, until after the filing of the petition in bankruptcy herein.