**In re James D. LUTGEN, Debtor.**

**WEGMANS FOOD MARKETS, INC., Plaintiff,**

v.

**James D. LUTGEN, Defendant.**

**Bankruptcy No. 98–11753 K.
Adversary No. 98–1182 K.**

United States Bankruptcy Court,
W.D. New York.

Sept. 10, 1998.

Raymond C. Stilwell, Adair Law Firm, Williamsville, New York, for plaintiff.

## OPINION [1]

MICHAEL J. KAPLAN, Bankruptcy Judge.

Prior to filing for bankruptcy relief, the debtor issued NSF checks to a third party. After the commencement of the bankruptcy case, the third party brought an adversary proceeding to have this Court hold that the debt upon those checks is nondischargeable. The Debtor defaulted. This Court now has occasion to revisit a previous decision wherein it held that a prevailing creditor in dischargeability litigation involving fraudulent conduct in connection with a loan, is not entitled to attorney's fees. See *American*

1. This Court's jurisdiction is not at issue.

*Express Travel Related Serv. Co., Inc. v. King (In re King)*, 135 B.R. 734, 738 (Bankr. W.D.N.Y.1992).

Specifically, Wegman's Food Markets (hereinafter "Wegman's" or "Plaintiff") alleges that James D. Lutgen (hereinafter "Lutgen" or "Debtor") issued fifteen checks to Wegman's between November 16, 1996 and February 4, 1997. The total value of the checks was $660.00. All of the checks were returned for insufficient funds. Plaintiff asserts that it made demand of Debtor for repayment, including lawful service charges associated with the checks. On March 17, 1998, Debtor filed for relief under Chapter 7 of the Bankruptcy Code.

On June 23, 1998, Plaintiff initiated this adversary proceeding to determine the dischargeability of the debt arising from the NSF checks under 11 U.S.C. § 523(a)(2). After proper, timely service of the commencement of this action, Debtor failed to respond to Plaintiff's motion for a default judgment.

Because Debtor defaulted, there are no questions of fact to be decided. Instead, the question before this Court is whether the recent United States Supreme Court decision in *Cohen v. de la Cruz*, —— U.S. ——, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998), impliedly overruled this Court's ruling in *King*. Contrary to Plaintiff's capable arguments, the Court now holds that *King* is not inconsistent with the *Cohen* decision, and *King* remains good law.

## DISCUSSION

### A. *Cohen* Involved a State Statute Abrogating the American Rule

■ In *Cohen*, the debtor was a landlord who had been sued by his tenants in a pre-petition action in state court for charging rents in excess of a local ordinance. After the debtor filed for Chapter 7 relief, the plaintiffs initiated an adversary proceeding to determine the excessive rents to be nondischargeable under § 523(a)(2)(A) as payments obtained by actual fraud. In the bankruptcy action, the plaintiffs sought treble damages

and attorney fees and costs pursuant to the state law under which the initial action was brought.[2]

The bankruptcy court ruled in favor of the tenants and concluded that the debtor had committed actual fraud under state law. See *De La Cruz v. Cohen (In re Cohen)*, 185 B.R. 171, 180 (Bankr.D.N.J.1994). The court wrote a second opinion to address the damages separately, and awarded the plaintiffs treble damages plus attorney fees and costs. See *De La Cruz v. Cohen (In re Cohen)*, 185 B.R. 180, 190 (Bankr.D.N.J.1995). After discussing the split in authorities among the circuits, the bankruptcy court held that the punitive damages from the state law action are nondischargeable under section 523(a)(2)(A). See *id.* at 188–89. After the bankruptcy court's decision was affirmed by the district and circuit courts, the Supreme Court granted *certiorari* to address whether " § 523(a)(2)(A) bars the discharge of treble damages awarded on account of the debtor's fraudulent acquisition of 'money property, services, or ... credit', or whether the exception only encompasses the value of the 'money property, services or credit' the debtor obtains through fraud." See *Cohen v. de la Cruz*, —— U.S. at ——–——, 118 S.Ct. at 1214–15.

The Supreme Court first focused on the language of § 101(5)(A) which "encompasses all liability for fraud," and § 523(a)(2)(A). See *id.* at 1215.

The Court then turned its analysis on § 523(a)(2)(A) by examining the policy that relief should be afforded only to the "honest but unfortunate debtor." See *id.* at 1216. (citing *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)). In addition, the Court examined Congress' intent to limit exceptions to restitutionary liability. See *id.* at 1218. The Court concluded that in light of the language of § 523(a)(2)(A) and the relevant legislative intent, any debt which arises from fraudulently obtaining money or property may not be discharged, and that the punitive damages and attorney's fees and costs that had been awarded were all excepted from discharge. See *id.* at 1219.[3]

Nowhere, however, did the Supreme Court, or any of the lower courts in the *Cohen* case, address the dischargeability of legal fees where there is no state statute commanding or permitting their award.[4] The attorneys' fees addressed in *Cohen* were imposed by the bankruptcy court, not because the plaintiff was put to the burden of establishing the non-dischargeability of the debt in bankruptcy court, but because that bankruptcy court found that the type of fraud that had been proven amounted to an "unconscionable commercial practice" under the state statute. The attorneys' fees were part of the "liability" or "debt" of the debtor precisely because the statute abrogated the American Rule under such circumstances.

**2.** The New Jersey Consumer Fraud Act provides, in relevant part:

> Any person who suffers any ascertainable loss of moneys or property ... as a result of the use ... or practice declared as unlawful under this act or the act hereby amended and supplemented may bring an action or assert a counterclaim therefor in any court of competent jurisdiction. In any action under this section the court *shall,* in additional to any other appropriate relief *award threefold the damages* sustained by any person in interest. *In all actions under this section ... the court shall award reasonable attorney fees, filing fees and reasonable costs of suit.*
>
> N.J.S.A. 56:8–19 (1989) (emphasis added).

**3.** U.S.C. § 523(a)(2)(A) provides in relevant part:

> A discharge under § 727, 1141, 1228(A), 1228(b) or 1328(6) of this title does not dis-

> charge an individual debtor for any debt ... for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by ... false pretenses, a false representation, or actual fraud, other than a statement respecting the Debtor's or an insider's financial condition ...
>
> (1993.)

**4.** Nor do either the District Court or Court of Appeals decisions directly address the issue of attorneys fees, per se. Instead, the District Court focused on the dischargeability of the treble damages award. See *De La Cruz v. Cohen (In re Cohen)*, 191 B.R. 599, 608–09 (D.N.J.1996). Similarly, the Court of Appeals was concerned with the question of dischargeability of punitive damages as a whole. See *Cohen v. De La Cruz (In re Cohen)*, 106 F.3d 52, 55 (3rd Cir.1997). The punitive damages discussed by the Third Circuit included both treble damages and attorneys fees as mandated by state law. See *id.* at 59.

Contrast this with *King.* The rationale of the *King* decision was based upon the legislative history of § 523, which clearly evidences Congress' intent not to award legal fees to creditors who are successful in a § 523 action. See *id.* at 735–36 (citing H.R. No. 95–595, 95th Cong. (1977), U.S.C.C.A.N.1978, pp. 5787, 6092).

Rather, as discussed in *King,* § 523(d) clearly obviates the American Rule in such litigation only when it is the debtor, rather than the creditor, who prevails. See 135 B.R. at 735–36. The absence of parallel language in favor of the creditor bringing a § 523 action persuades this Court that there is no "plain meaning" in the statute nor any evidence of Congressional intent which would give rise to a departure from the American Rule in favor of the creditor.

To extrapolate from *Cohen* a rule that a creditor is always entitled to attorneys' fees that were incurred in bankruptcy court when the creditor succeeds in establishing a non-dischargeable debt under § 523(a)(2) would be to hold that the American Rule never applies when a creditor prevails in establishing a § 523(a)(2) fraud claim in Bankruptcy Court. There is nothing in the *Cohen* decision to warrant such a holding, for there is nothing in *Cohen* which indicates that the Supreme Court was concerned with the type of legal fees sought in either *King* or the case before this Court today. Conversely, there is nothing in the *King* decision that would *preclude* an award of attorneys' fees to a creditor where the creditor could point to some basis for an award of such fees other than the mere fact that the creditor had to prove up the fraud in Bankruptcy Court. And nothing in the *King* holding warrants denial of non-dischargeable status to a pre-bankruptcy award of attorneys' fees in a pre-bankruptcy judgment against the debtor whether those attorneys' fees were awarded because of the terms of a contract or some other basis, such as a state statute such as was at issue in the *Cohen* case. *See, e.g. Kelleran v. Andrijevic,* 825 F.2d 692, 694–96 (2d Cir.1987) cert. denied 484 U.S. 1007, 108

S.Ct. 701, 98 L.Ed.2d 652 (1988). What is awarded in pre-bankruptcy litigation is usually preserved in bankruptcy court. But when bankruptcy has cut-off the further application of contract promises by the debtor (as of the date of the bankruptcy petition), the bankruptcy court must not add a contract element of damage to what it finds to be a *tort* liability (as will now be explained).

**B. 11 U.S.C. § 523(a)(2) Liability is Tort Liability, Not Contract Liability**

■ Although not raised by the creditor in this case, this writer will take this opportunity to address decisions such as *Mayer v. Spanel Int'l. Ltd. (In re Mayer),* which hold that legal fees incurred in proving up the § 523(a)(2) non-dischargeability of a credit card debt, are merely another element of the nondischargeable "debt," in light of a provision in the contract between the credit card lender and the debtor that allows the creditor "all collection costs." See, e.g., 51 F.3d 670 (7th Cir.1995).

To the extent that those cases hold that the American Rule is always obviated when the lender is entitled to collect collection costs as a matter of the contractual relationship between the parties, it is respectfully submitted those decisions err because a § 523(a)(2) complaint is not, and never has been, an action on the contract. Rather, by having properly scheduled the debt as "undisputed," (or by otherwise admitting the debt) the debtor has readily conceded liability on the contract, measured as of the date of bankruptcy. That amount would already include any pre-petition collection costs. (The cost of filing a Proof of Claim in the bankruptcy case would also be part of the "collection" costs.)

But mere breach of contract is nearly always [5] discharged in bankruptcy. The creditor who files the § 523(a)(2) complaint is not simply taking a step in collection of a contract debt, but is attempting to establish a basis outside the contract for having the conceded contractual obligation survive bankruptcy. The contract terms are, for that purpose, irrelevant.[6] By no means should

---

5. See, *e.g.,* matrimonial settlements under 11 U.S.C. §§ 523(a)(5) and (15), for an exception.

6. See, for example 1A Collier on Bankruptcy, ¶ 17.16[6], p. 1650.1, *14th* Edition (not *15th* ), wherein the Treatise, contrasting an action in

those fees be part of the "liability" of the debtor for the "debt" that the debtor incurred through what the court concludes was fraud. One does not become "liable" for such attorneys' fees merely because the fraud had to be proven in a legal proceeding. Rather, one becomes "liable" for such attorneys' fees only when the fraudulent conduct is proven to warrant departure from the American Rule. No *contractual* provision would warrant departure from the American Rule in an action for *tortious* conduct toward the other contracting party.[7]

## CONCLUSION

■ Because this is a "bounced check" case it does not involve any contract provision for attorney's fees at all. But, as discussed above, any such contract provision would be of no consequence. If attorney's fees are to be awarded to a creditor in § 523(a)(2) litigation that does not implicate a statute providing for such fees, the award would have to be based on malicious conduct, harassment or oppressive action, or the other recognized bases for an exception to the American Rule. See 22 Am.Jur.2d Damages

state court on the debt, and a subsequent dischargeability action under § 17a(2) of the 1898 Act based on a false financial statement that led to the debt, stated:

> The issues in the two actions are different. As to the facts raised in the state court action, the particular ones pertaining to § 17a(2) of the Bankruptcy Act were not necessary to the judgment obtained, *and not even relevant thereto*. They become relevant only on the issue of dischargeability of the debt in bankruptcy, and have *no bearing on whether or not one is indebted to another*. [Emphasis Added].

> Similarly, Remington on Bankruptcy provides that [i.] "If it can be shown that the creditor did not know of the fraud when he brought suit or obtained judgment as upon contract, he *is* not precluded from showing it, on later discovery, in avoidance of the discharge." See 8 Remington on Bankruptcy § 3324 (1955).

7. Clearly, the history of § 523(a)(2) was not brought to the cited courts' attention: from 1898 until 1970, the distinction between a bankrupt's liability on a contract and her liability for the type of tortious conduct that would render that very same liability non-dischargeable in bankruptcy under § 17(a)(2) of the 1898 Act was so clearly recognized that a creditor could sue in state court on the fraud even after the liability on the contract was discharged in bankruptcy. *In*

§§ 611–623 (discussing the American Rule and exceptions thereto).

The creditor's request to have attorneys' fees added to the default judgment obtained in this case is denied.

SO ORDERED.

*re Menzin,* 238 F. 773, 774 (2d Cir.1916) (citing *Friend v. Talcott,* 228 U.S. 27, 33 S.Ct. 505, 57 L.Ed. 718 (1913)).

The Dischargeability Amendments of 1970 gave the bankruptcy referee exclusive jurisdiction to decide nondischargeable claims based on fraud. Since then, the broadening of the fraud exception to encompass false financial statements, credit renewals and extensions based on false representations, etc. has caused those not familiar with the history to view dischargeability litigation as simply another step in the contract collection process. But proving fraud is *not* another step in the collection process: It is proving a distinct characteristic of the debtor's conduct that renders the contract liability nondischargeable. *Attorney's fees for proving fraud have never been part of "liability" for fraud unless the fraud was of a nature warranting abrogation of the American Rule.*

And to argue that the Supreme Court's concern for making the creditor "whole" commands a different result, adds nothing to the debate. "Whole" means award of all elements of damages that are awarded as the "liability" for the wrongful conduct. And, as stated earlier, the *Cohen* case involved a statute that imposed of attorneys' fees. But under the American Rule, attorneys fees have never been an element of damages, required to make an aggrieved party "whole."